THE STATE, MARGARET C. SHEEHEY, PROSECUTRIX, v. THE MAYOR, &c., OF HOBOKEN, THE HOBOKEN PRINTING AND PUBLISHING COMPANY ET AL.

Submitted March 28, 1898—Decided June 13, 1898.

In the "Act to regulate the price of legal advertising," approved April 14th, 1891 (*Gen. Stat., p.* 2325), the word "line" means a row of words, letters or figures extending across a column, without regard to the size of the type in which it is printed.

---

On *certiorari* to review a resolution of the common council of the city of Hoboken.

Before Justices DIXON and COLLINS.

For the prosecutrix, *Leon Abbett.*

For the defendants, *William D. Edwards.*

The opinion of the court was delivered by

DIXON, J.    The object of this *certiorari* is to set aside a resolution of the Hoboken common council passed December 22d, 1897, so far as it orders the payment of certain bills for printing presented by " The Evening News " and " The Observer," two newspapers published in the city of Hoboken.

The bills are made out upon the theory that the price is fixed at " ten cents per line for the first insertion and five cents per line for each subsequent insertion " by the "Act to regulate the price of legal advertising," approved April 14th, 1891 (*Gen. Stat.*, *p.* 2325), and that a " line," under that act, denotes not an actual row of words, letters or figures extending across a column of the newspaper, but so much space in a column as would be occupied by a line of words, letters or figures printed in agate type.    As the matters charged for in these bills were all printed with type larger than the agate, the price is greater than is warranted by the number of lines appearing in the newspaper.

The testimony taken in the case tends to prove that among newspapers it is customary to charge for advertising according to the space occupied, and to indicate that space by the number of lines which might be printed in it with agate type, and thus in stating a price a line means an agate line.    It is therefore insisted that such is the intent expressed by the statute.

But we cannot so interpret the law.    The word " line " is not a technical term but one in common use, and having in common usage, when applied to printed matter, a well-known signification.    It then means a row of words, letters or figures printed across a page or column, without regard to the size of the type.    As was said by the Supreme Court of the United States in *Maillard* v. *Lawrence*, 16 *How.* 251, 261, " the popular or received import of words furnishes the general rule for the interpretation of public laws," although " in instances in which words or phrases are novel or obscure, as in terms of art where they are peculiar or exclusive in their

signification, it may be proper to explain or elucidate them by reference to the art or science to which they are appropriate."

We are therefore of opinion that this common word cannot be forced out of the meaning which the general public and the legislature reading the statute would probably ascribe to it, merely because among a limited class of persons there has been fixed upon it a peculiar signification.

In *Daly* v. *Ely, 8 Dick. Ch. Rep.* 270, Vice Chancellor Pitney regarded this act as merely empowering public authorities to make special contracts for the rate therein allowed, leaving the charges for printing, without special contract, as specified by the act of March 20th, 1857, and its supplements. *Gen. Stat., p.* 2324. If this be the correct view, probably the original act of 1857 must be resorted to for the legal measure of compensation in this case, since the supplements, which relate only to the "legal notices designated in the act," seem scarcely to embrace municipal printing. But under this law, likewise, the present bills are excessive, and the resolution to pay them was illegal and should be set aside, with costs.